IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE USA, | No. C06-05351 MJJ |
| Plaintiff, | **ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| GRAPHNET INC, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Plaintiff Oracle USA, Inc. ("Oracle USA") and Plaintiff Oracle International Corporation's ("OIC") (collectively, "Oracle" or "Plaintiff") Motion for Preliminary Injunction.[1] Defendant Graphnet, Inc. ("Graphnet" or "Defendant") opposes the motion. Also before the Court are Defendant's Evidentiary Objections to certain evidence filed in support of Plaintiff's Motion for Preliminary Injunction.[2] For the following reasons, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.

## FACTUAL BACKGROUND

The current action arises from Defendant's alleged copyright infringement of certain software programs owned by Plaintiff.

**A.     The Parties**

---

[1] Docket No. 15.

[2] Docket No. 32.

1  Plaintiff is a software company that develops, manufactures, markets, distributes, and
2 services database and middleware software as well as applications software.  (Complaint ("Compl.")
3 ¶ 17; Defendant's Proposed Findings of Fact ("Defendant's PFF") ¶ 2.)  Defendant develops,
4 markets, and sells customized telecommunication solutions in the messaging industry relating to fax,
5 e-mail, voice, and SMS technologies.  (Declaration of Guy Conte ("Conte Decl.") ¶ 2; Compl. ¶ 11.)

7  Plaintiff is the owner of all rights, title, privilege, and interest in the software programs
8 entitled, "Oracle Works."  (Declaration of Thomas Angioletti ("Angioletti Decl.") ¶ 4.)  Oracle
9 Works consists of the following software programs: Oracle8 Database Enterprise Edition
10 ("Oracle8"), Oracle8i Database Enterprise Edition ("Oracle8i"), Oracle9i Database Enterprise
11 Edition Release 1 ("Oracle9i Release 1"), and Oracle9i Database Enterprise Edition Release 2
12 ("Oracle9i Release 2").  (*Id.*)  Oracle Works are relational database programs that enable the user to
13 store, manage, and process large amounts of data.  (Compl. ¶ 18;  Defendant's PFF ¶ 5.)  Plaintiff is
14 authorized to sell Oracle Works software licenses to customers in the United States.  (Angioletti
15 Decl. ¶ 4.)
16  Plaintiff sells software licenses for Oracle Works through Plaintiff's website, through
17 Plaintiff's direct sales force, or through authorized resellers.  (Angioletti Decl. at ¶ 5.)  When a
18 customer purchases a license from Plaintiff's website, the customer must create a customer account
19 and agree to a "click-wrap agreement" that sets out licensing definitions, terms, and conditions
20 governing the use, copying, and other rights and limitations in the applicable software.  (*Id.*)  The
21 "click-wrap agreement" requires the potential customer to manifest his or her assent to the terms of a
22 license by clicking a button on a dialog box or pop-up window before the customer can download
23 the software being licensed or before the software media will be shipped to the customer.  (*Id.*)
24 Customers can manifest rejection by clicking a separate button or leaving the webpage.  (*Id.*)
25  **B.  The Parties' Licensing Agreements**
26  The parties do not agree on the particular software license agreements at issue in this case.
27 Plaintiff's Complaint does not specifically identify the software licenses that Defendant has
28 allegedly infringed.  Plaintiff alleges only that Defendant is infringing copyrights for "one or more

2

of the Oracle Works." (Compl. ¶¶ 27, 36; Defendant's PFF ¶ 8.) Plaintiff's Motion for Preliminary Injunction similarly does not identify the particular software licenses that Defendant has allegedly infringed. However, the record contains documentary evidence of at least three software licensing agreements between the parties.

### 1. 1996 Contract

On April 17, 1996, Defendant purchased a license from Plaintiff to use the Oracle7 version of Plaintiff's software ("1996 contract"). (Declaration of Rick Vanaria ("Vanaria Decl.") ¶ 5, Ex. D, Licensing Agreement for Oracle7; Second Declaration of Rick Vanaria ("Second Vanaria Decl.") ¶ 5, Ex. B, Order Form for Oracle7.) The Oracle7 license was solely for the purpose of developing other software programs and did not permit Defendant to use the software to run its own internal business operations. (Vanaria Decl. ¶ 5, Ex. B.) Defendant contends that it stopped using Oracle7 in the late 1990s. (Declaration of Guy Conte ("Conte Decl.") ¶ 6.)

### 2. 1998 Contract

On August 20, 1998, Defendant purchased a license from Plaintiff to use the Oracle8 version of Plaintiff's software ("1998 contract"). (Second Declaration of Rick Vanaria ("Second Vanaria Decl.") ¶ 4, Ex. A, Order Form for Oracle8.) Defendant admits that it currently uses Oracle8 on one of its servers to store billing information. (Conte Decl. ¶¶ 3, 8.) Defendant claims that it purchased Oracle8 "in the late 1990s." (*Id.*) Neither party has been able to locate a copy of the Oracle8 licensing agreement. (*Id.* at ¶ 3; Second Vanaria Decl. ¶ 6.) However, Plaintiff sent a report to Defendant in November 2002 indicating that Defendant had a license to use Oracle8 at that time. (Conte Decl. ¶ 3, Ex. A, Contracts Report.) Defendant contends that Oracle8 is the only one of Plaintiff's software programs that Defendant currently uses. (*Id.* at ¶ 4.)

### 3. 2002 Contract

On July 19, 2002, an individual identified as "rtallapragada@hotmail.com" purchased a license from Plaintiff to use the Oracle9i version 9.2.0.1.0 of Plaintiff's software ("2002 contract"). (Vanaria Decl. ¶ 6, Ex. E, Licensing Agreement.) The 2002 contract granted Defendant a 30-day "trial" license to use the software. (*Id.*) Upon expiration of the trial license, Defendant was obligated to either cease using the program and delete it from its computer system, or obtain a

3

1 license from Plaintiff to continue use. (*Id.*)

2 Defendant disputes the validity of the 2002 contract. In particular, Defendant contends that "rtallapragada@hotmail.com" is a former employee of Defendant who was not employed by Defendant at the time of the 2002 contract, and therefore had not authority to enter into any software agreements on Defendant's behalf. (Conte Decl. ¶ 7.) The address listed on the 2002 contract is 1560 Pollitt Drive Apt 1A Fair Lawn, NJ 07410. (Vanaria Decl. ¶ 6, Ex. E, Licensing Agreement.) Defendant contends that this is the last known home address for "rtallapragada@hotmail.com." (*Id.*)

Plaintiff asserts that Defendant has admitted to using Oracle9 software. (Declaration of Baldish Takhar ("Takhar Decl.") in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ¶ 7-8, Exs. D, E.) Plaintiff identifies two documents in support of this contention: (1) a November 16, 2006 e-mail from Defendant's employee, Joel Kenan, to Oracle stating, "The version of Oracle we use now is 9.2.0.3"; and (2) a March 3, 2006 facsimile from Defendant's attorney to Plaintiff's counsel containing references to versions 8 and 9.2. (*Id.*)

### C. Defendant's Alleged Copyright Infringement

Plaintiff makes a series of general copyright infringement allegations against Defendant.[3] Plaintiff states that in 2004, it learned that Defendant was reproducing and using Plaintiff's programs, including the Oracle Works database programs, in excess of rights granted by any license. (Vanaria Decl. ¶ 7.)[4] Plaintiff claims that a former unnamed employee of Defendant notified Plaintiff that Defendant was impermissibly using Plaintiff's software. (*Id.* ¶ 8.) Plaintiff contends that it subsequently demanded an audit of Defendant's software use whereby Plaintiff met with two of Defendant's employees. (*Id.* ¶ 9.) Plaintiff states that during the audit, Defendant's employees filled out an "Oracle Server Worksheet" thereby listing the Oracle software Defendant was using, including Oracle9. (*Id.*)[5] Plaintiff further avers that it learned that Defendant was using Plaintiff's software as a component of the software products that Defendant sells to its customers. (*Id.* at ¶ 10.)

---

[3]As discussed more fully below, Defendant makes evidentiary objections to these general allegations of copyright infringement.

[4]Plaintiff's Complaint makes different assertions and alleges that Plaintiff became aware of the alleged unauthorized use in 2005, not 2004. (Compl. ¶ 27.)

[5]Plaintiff has not provided a copy of the Oracle Server Worksheet in support of its motion.

4

1 According to Plaintiff, Plaintiff subsequently notified Defendant of its unauthorized use and
2 attempted to resolve the matter without success.  (*Id*. at ¶¶ 11-13.)

### D.  Procedural History

On August 30, 2006, Plaintiff filed the current action against Defendants alleging claims for copyright infringement and breach of contract.  (Compl. ¶¶ 30-44; Defendant's PFF ¶ 7.)  On January 8, 2007, this Court denied Defendant's motion to dismiss for lack of personal jurisdiction and denied Defendant's motion to transfer.  Plaintiff now seeks a preliminary injunction based on its copyright infringement claim requiring Defendant to stop using all unlicensed Oracle software.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 permits the issuance of a preliminary injunction to preserve the positions of the parties until a full trial can be conducted.  *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006) (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  In all cases, the burden of persuasion remains with the party seeking preliminary injunction relief.  Hon. William R. Schwarzer, et al., *Federal Civil Procedure Before Trial* § 13:159 (2006) (citing *West Point–Pepperell, Inc. v. Donovan*, 689 F2d 950, 956 (11th Cir. 1982)).  When a party is seeking a preliminary injunction, he or she must make a "clear showing" of either: "(1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party.  These standards 'are not separate tests but the outer reaches of a single continuum.'"  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc*., 240 F.3d 832, 839-40 (9th Cir. 2001) (citation omitted); *City of Angoon v. Marsh*, 749 F.2d 1413, 1415 (9th Cir. 1984).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."  *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir.1998) (citation omitted).  Consequently, "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor ."  *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam) (citation omitted); *see also Miller v. California Pac. Med. Ctr*., 19 F.3d 449, 456 (9th Cir. 1994) (en banc) (citations omitted).

5

1  The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged except in a case clearly warranting it. *Sierra Club v. Hickel*, 433 F.2d 24, 33 (9th Cir. 1970). However, the standard is different in copyright infringement actions. "A showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm." *Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1335 (9th Cir. 1995). "An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Optinrealbig.com, LLC v. Ironport Sys.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004). A party showing a reasonable likelihood of success on the merits of a copyright infringement claim is thus normally entitled to a preliminary injunction. *Id.*

## DISCUSSION

At oral argument in this matter, Plaintiff's counsel explained that the Plaintiff's copyright contentions pertain to three software applications: (1) billing; (2) messaging; and (3) development. In support of Plaintiff's motion for a preliminary injunction, Plaintiff primarily relies on the two declarations of its sales manager, Rick Vanaria, and the declaration of its business practices manager, Baldish Takhar.[6] As evidence of its likelihood of success on the merits, Plaintiff cites to a business presentation, created by Plaintiff, purportedly from information obtained directly from Defendant. (Second Vanaria Decl. ¶ 7, Ex. C.) According to Plaintiff, the content of the business presentation demonstrates that Defendant has admitted to using Plaintiff's business applications in excess of the applicable license, and has admitted to using Plaintiff's messaging and development applications without any license. Plaintiff insists that the content of the business presentation was taken from the March 3, 2006 fax, purportedly sent from Defendant to Plaintiff. (Takhar Decl., ¶ 8, Ex. E.) Defendant objects to the Vanaria declarations on grounds that Vanaria fails to establish personal knowledge of the statements contained therein, that the statements are hearsay, and that Vanaria has failed to provide a sufficient evidentiary foundation. Defendant objects to the content of the March 3, 2006 fax on grounds of foundation, authentication, and settlement communications.

The Court finds, upon review of the evidentiary record in this matter, that Plaintiff has failed

---

[6]Takhar's declaration was offered by Plaintiff in support of Plaintiff's opposition to Defendant's prior motion to dismiss.

6

to present competent evidence which would support its request for injunctive relief. Even assuming the March 6, 2003 fax, and accompanying documents, were provided to Plaintiff by a representative of Defendant, Vanaria's opinion that Graphnet is engaged in copyright infringement is not supported by admissible evidence. First, the Vanaria declarations, and particularly paragraph 7 of his second declaration, provide no factual basis for the opinions he provided therein. As importantly, the second Vanaria declaration fails to set forth the basis for his opinion that the documents accompanying the March 6, 2003 fax and the business presentation reflected in Exhibit C, establish unlawful copyright infringement. The Court has reviewed both the fax documents attached to the Takhar declaration and the business presentation reflected in Exhibit C, and finds that the text of these documents do not establish that Defendant has engaged in copyright infringement. Finally, Plaintiff has failed to submit competent evidence which would establish that any representative of Defendant made an admission that supports a finding of copyright infringement with respect to the applications at issue.

## CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated: February 12, 2007

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

7